IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-03145-CMA-NRN

MARIA BLEA,

Plaintiff,

v.

CITY AND COUNTY OF DENVER DEPARTMENT OF HUMAN SERVICES,
BRIAN YAUK,
TONI BELLUCCI,
GARY CRAIN,
LORI NOBLE,
JUNE MOREIN, and
PAUL CAVENDER,

Defendants.

---

## RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS PURSUANT RULE 12(b)(1) and 12(b)(6)
## (Dkt. #37)

---

**Reid Neureiter**
**United States Magistrate Judge**

This is a discrimination case brought by Maria Blea against the City and County of Denver Department of Human Services (the "DDHS") and a number of individual employees of that Department (collectively "Defendants"). The matter is before the Court on Defendants' Motion to Dismiss (Dkt. #37), filed July 27, 2018, which was referred by Judge Arguello for recommendation on August 15, 2018. (Dkt. #40.)

**The Procedural Background**

Plaintiff Maria Blea filed her complaint, without the assistance of counsel, on December 27, 2017. (Dkt. #1) The next day, Magistrate Judge Gallagher issued an

order directing Ms. Blea to cure the deficiency of the complaint not being in the proper form. (Dkt. #3) On January 25, 2018, Ms. Blea, still proceeding pro se, amended her complaint. (Dkt. #7). The Amended Complaint is the operative pleading in the case.

On July 27, 2018, Defendants moved to dismiss on governmental immunity and other grounds. (Dkt. #37.) On September 17, 2018, Defendants moved to stay all discovery as well as any Rule 26 disclosures. (Dkt. #42.) The stay was granted on September 18, 2018. (Dkt. #46.)

On November 16, 2018, the Court heard extensive argument on Defendants' Motion to Dismiss. Plaintiff was present and presented argument on her own behalf.

**The Plaintiff's Allegations**

Ms. Blea was an employee in the Department of Human Services of the City and County of Denver. Her position was Accounting Tech 1. Although not detailed explicitly in her Amended Complaint, at oral argument, Ms. Blea explained that her disability is a diagnoses of multiple chemical sensitivities, meaning that she is allergic to perfumes, lotions, and fragrances. As an accommodation, she was given an office, which allowed her to work without being regularly exposed to any fragrances or lotions that her co-workers may have worn. When Ms. Blea attended meetings, she had to wear sunglasses, a mask, and gloves. When regular office events took place, Ms. Blea felt ostracized because she could not participate. She felt uncomfortable wearing her mask around her co-workers in such situations.

Ms. Blea says she was repeatedly asked by her supervisor, Defendant Brian Yauk, what her medical condition was, which Ms. Blea felt was a violation of her medical privacy. Ms. Blea says that she was discriminated against due to her disability

2

because she was not allowed to make up time when others were permitted make up time. Ms. Blea further alleges that in a September 2015 meeting with a Human Resources Representative, Mr. Yauk slammed his fist on the table, yelled at Ms. Blea, and called her a liar. He then "shook his closed fist" and allegedly came within inches of hitting Ms. Blea. In this meeting, Mr. Yauk allegedly said that "he could not tell if Ms. Blea was laughing or smirking" because she was wearing the sunglasses and mask that her disability required.

Ms. Blea recounts a general pattern of unfair and unequal treatment in the assignment of work, the grant of leave, and other practices. For example, after Ms. Blea was out on leave, and upon returning to work, she alleges that her "files and e-mails had been deleted from her computer," but "no one knew what happened." As Ms. Blea says in her Amended Complaint, she "was targeted, singled out, and retaliated against on several other occasions. Each time she brought up something, it was turned around and used against her." Ms. Blea says she was "treated differently once she received her Americans with Disability Act ("ADA") accommodation." The mistreatment included assignment of additional work, lack of communication, exclusion from parties, and unfair treatment in the distribution of work. Ms. Blea says she was informed by an attendee at her ADA accommodation meeting that Defendant June Allen stated, "Do what you need to do to get rid of her [Ms. Blea]."

Overall, Ms. Blea alleges that a hostile and discriminatory work environment was created based on her disability that was so severe that it caused Ms. Blea to no longer feel safe in the work environment. Ms. Blea developed PTSD, making her unable to

return to work, which caused her to lose her employment, her house, and her ability to work.

Ms. Blea has sued DDHS and a number of her co-workers at that Department, including Mr. Yauk, her supervisor. She has sued under what she terms the "ADA Notification Act" and alleges a claim of discrimination and for "retaliation against a person with a disability."

**The Pro Se Pleading Standard**

Ms. Blea has pled her case and argued her position without the assistance of counsel. Because she is bringing this lawsuit by herself, without an attorney, the Court must be more liberal in considering her allegations, as compared to a case where an attorney is present. In *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), the Tenth Circuit Court of Appeals established the legal standards by which a pro se complaint is measured in this circuit:

> A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.
>
> The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. Not every fact must be described in specific detail and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint. Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the

sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Hall*, 935 F.2d at 1110 (citations omitted). The Court will assess Ms. Blea's Amended Complaint and the arguments for dismissal in light of the standard articulated in *Hall v. Bellmon*.

**The Defendants' Motion to Dismiss**

Defendants move to dismiss on two grounds. With respect to the DDHS itself, the Motion seeks dismissal on the ground that this Court lacks subject matter jurisdiction. Specifically, the DDHS argues that as an arm of the State of Colorado, the Eleventh Amendment bars this federal court's assertion of jurisdiction over the DDHS under the ADA. *See* Motion at 2. With respect to the individual Defendants, the Motion argues that all ADA claims must be dismissed because the ADA only allows lawsuits against employers and precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statute's definition. *See* Motion at 5.

**The Standard for Decision**

The determination of sovereign immunity is properly considered on a motion to dismiss under Rule 12(b)(1). *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001). DDHS makes a facial attack on the Court's jurisdiction, and in reviewing a facial attack on the complaint, a district court must accept the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

With respect to the individual defendants' motion to dismiss under Rule 12(b)(6), the complaint must plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support the plaintiff's allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). In other words, the complaint must include enough

facts to state a claim to relief that is "plausible on its face." *TON Services, Inc. v. Quest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). Dismissal is appropriate "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Mcdonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).

**The DDHA is immune from the ADA claims raised by Plaintiff's lawsuit because of the Eleventh Amendment.**

The United States Supreme Court has held that the ADA did not validly abrogate the states' Eleventh Amendment immunity. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). In addition, "Eleventh Amendment immunity extends to state agencies that act as arms of the state, but it does not extend to counties, cities, or other political subdivisions of the state." *Ambus v. Granite Bd. Of Educ.*, 975 F.2d 1555, 1560 (10th Cir.1992). Thus, if the DDHS acts as an arm of the State of Colorado, it is immune from suit under the Eleventh Amendment.

The determination of whether a particular state entity is an arm of the state such that Eleventh Amendment immunity applies is based on consideration of four factors: (1) the character of the entity under state law; (2) autonomy accorded the entity under state law; (3) the entity's finances; and (4) whether the entity in question is concerned primarily with local or state affairs. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir.2007) (citing *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), and *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164, 1166 (10th Cir. 2000)).

This Court need not perform this multi-factor analysis anew. Multiple judges of the District Court for the District of Colorado have already done the analysis and found that Colorado county human services departments are arms of the state of Colorado for

6

Eleventh Amendment immunity purposes. Most recently, in *T.D. v. Patton*, 149 F. Supp. 3d 1297 (D. Colo. 2016), a minor brought suit against the DDHS arising from his removal from his mother's custody and his allegedly erroneous placement with his father, a sex offender, who then sexually and physically assaulted him. In that case, Judge Moore engaged in an exhaustive application of the relevant *Mount Healthy* factors, including analyzing Colorado state court decisions, the fact that the majority of county human services department budgets come from the state, and the inability of the DDHS to issue bonds or levy taxes. While finding it a "much closer question than" was suggested in the DDHS's pleadings, Judge Moore concluded that the DDHS was an arm of the State of Colorado and therefore was immune from suit under the Eleventh Amendment. As Judge Moore stated, "Ultimately, the DDHS' inability to raise any revenues on its own initiative, and the state's significant control over even those moneys that the DDHS does receive, demonstrates the DDHS' reliance upon, and its status as an arm of, the state." 149 F. Supp. 3d at 1308.

Similarly, in *Schwartz v. Jefferson Cty. Dep't of Human Servs.*, No. 09-CV-00915-WJM-KMT, 2011 WL 1843309 (D. Colo. May 16, 2011), Judge Martinez independently applied the *Mount Healthy* factors to the Departments of Human Services of both Jefferson County and the City and County of Denver, coming to the same conclusion and dismissing the case on immunity grounds. "In view of the broad control the state has over the County Defendants pursuant to explicit statutory provisions, the funding the County Defendants receive from the state, the County Defendants' lack of power to levy taxes, and the consistent rulings by this court and the state courts that such departments are arms of the state, the Court finds the County Defendants are

arms of the state." *Schwartz*, 2011 WL 1843309 at *6. Numerous other decisions have decided the issue the same way. *See, e.g., Jackson v. City and Cty of Denver*, 628 F. Supp. 2d 1275, 1285-85 (D. Colo. 2008) (holding that the Eleventh Amendment bars claims against the DDHS); *Freeman v. White,* 2006 WL 2793139, at *8–9 (D. Colo. Sept. 28, 2006) (determining that DDHS is an arm of the state for purposes of Eleventh Amendment immunity and cataloguing other cases holding the same); *Rodriguez v. City & Cty of Denver*, Civ. No. 01RB962 at 5 (D. Colo. Feb. 7, 2003) (holding that DDHS is an arm of the state entitled to Eleventh Amendment immunity against employment discrimination claims brought under sections 1981 and 1983); *Pierce v. Delta Cty Dep't of Soc. Servs.*, 119 F. Supp. 2d 1139, 1148 (D. Colo. 2000) (adopting the reasoning of *Wigger v. McKee*, 809 P.2d 999, 1002–04 (Colo. App.1990), which determined that the Arapahoe County Department of Social Services was an arm of the State of Colorado); *Cobb v. City & Cty of Denver*, 761 F. Supp. 105, 106 (D. Colo. 1991); *Oyler v. City & Cty of Denver*, 1990 WL 134485, Civ. No. 90–A–1255 (D. Colo. Sept. 13, 1990) ("[M]unicipal departments of social services are in reality arms of the state and therefore immune from suit in federal court.").

For the reasons cited in the above cases, the Court recommends that Ms. Blea's ADA claims against the DDHS be dismissed on the ground that the Department is an arm of the State of Colorado and, as such, is immune from suit in federal court under the Eleventh Amendment of the United States Constitution.

### Ms. Blea's claims against the individual Defendants must be dismissed because the ADA does not allow claims against individuals unless they qualify as "employers" under the Act.

The rule in the Tenth Circuit is that individuals who are co-workers or supervisors of an ADA plaintiff may not be sued under the ADA in their individual capacity. *Butler v. City of Prarie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999). The ADA prohibits employment discrimination on the basis of disability by "covered entities." *See* 42 U.S.C. § 12112(a). The term "covered entity" means an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An "employer" means "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person . . . ." 42 U.S.C. § 12111(5)(A). Because Ms. Blea does not allege (and cannot allege) that any of the individual defendants meet the statutory definition of "employer," the claims against the individual defendants must be dismissed.

### Recommendation

The Court **RECOMMENDS** that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) (Dkt. #37) be **GRANTED** and that Ms. Blea's disability discrimination claims against the DDHS and the individual defendants be dismissed. In recommending dismissal of Ms. Blea's disability discrimination claims, the Court is in no way discounting Ms. Blea's recitation at oral argument of what she says occurred. The Court is not making any judgment about her credibility, nor condoning the type of behavior that she claims she experienced. But under the law as it currently stands, and the legal precedent interpreting that law, Ms. Blea simply has no recourse in federal

court against either the DDHS or the individuals she has named as defendants, even if what she says happened is true.

IT IS ORDERED that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: November 26, 2018
Denver, Colorado

N. Reid. Neureiter
United States Magistrate Judge